IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Apache Corporation and | § | |
| Apache Deepwater LLC, | § | |
| *Plaintiffs,* | § | |
| v. | § | Civil Action No. 4:15-cv-00063 |
| W&T Offshore, Inc., | § | |
| *Defendant.* | § | |

Apache's Response to
<u>W&T's Motion for Summary Judgment</u>

Table of Contents

Table of Contents ....................................................................................................i

Table of Authorities ............................................................................................. ii

Table of Exhibits ................................................................................................iv

I. Stage of Proceedings and Standard of Review ...........................................3

II. W&T Breached Its JOA Obligation to Pay 49% of P&A Costs ...............4

    A.    Under Federal Law and the JOA, W&T Has Been Obligated to Pay Its Share of the P&A Costs Ever Since It Acquired Its Interest in the MC 674 Wells....................4

    B.    JOA § 18.4 Defeats W&T's Argument. .....................................7

    C.    W&T's Repeated Acknowledgment of Its P&A Obligations Disproves Its New Litigation Position and Defeats Summary Judgment. .......................................9

    D.    JOA § 6.2 Does Not Limit JOA § 18.4 to Require Pre-Approval of Government-Mandated Abandonments. ..............12

    E.    W&T and its Predecessor Elected to Participate in the MC 674 Exploration, Development, and P&As .....................16

III. The JOA Accounting Procedures Provide for Overhead ........................19

IV. Conclusion .............................................................................................21

Certificate of Service ...........................................................................................23

Table of Authorities

<u>Cases</u>

*Favrot v. Favrot*,
    68 So. 3d 1099 (La. Ct. App. 2011) ............................................................4

*Forest Oil Corp v. Superior Oil Co.*,
    338 So. 2d 758 (La. App. 4th Cir. 1976) ...................................................16

*Frischhertz Elec. Co. v. Hous. Auth. of New Orleans*,
    534 So. 2d 1310 (La. Ct. App. 1988) .........................................................20

*Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*,
    683 F.3d 666 (5th Cir. 2012) ......................................................................3

*Indus. Roofing & Sheet Metal Works, Inc. v. J.C. Dellinger Mem'l Trust*,
    751 So. 2d 928 (La. Ct. App. 1999) ...........................................................20

*La. Fed'n of Teachers v. State*,
    118 So. 3d 1033 (La. 2013) .........................................................................7

*Lancaster v. Petroleum Corp.*,
    491 So. 2d 768 (La. App. 3d Cir. 1986) .....................................................16

*Lomark, Inc. v. LavigneBaker Petroleum, L.L.C.*,
    110 So. 3d 1107 (La. Ct. App. 2013) .........................................................10

*Molero v. California Co.*,
    145 So. 2d 602 (La. Ct. App. 1962) ...........................................................15

*Naquin v. Elevating Boats, L.L.C.*,
    817 F.3d 235 (5th Cir. 2016) ......................................................................3

*Oakerson v. City of Brownsvill*e,
    No. 15-41256, 2016 WL 3996701 (5th Cir. July 25, 2016) ........................19

*Prejean v. Guillory*,
    38 So.3d 274 (La. 2010) ..............................................................................8

<u>Statutes</u>

43 U.S.C. § 1333(a)(2)(A) ....................................................................................3

ii

LA. CIV. CODE ANN. ART. 1983 ...................................................................................8

LA. CIV. CODE ANN. ART. 2015 .................................................................................15

LA. CIV. CODE ANN. ART. 2045 ...................................................................................8

LA. CIV. CODE ANN. ART. 2046 ...................................................................................8

LA. CIV. CODE ANN. ART. 2049 .................................................................................15

LA. CIV. CODE ANN. ART. 2050 .................................................................................14

LA. CIV. CODE ANN. ART. 2053 ............................................................................ 4, 10

Other Authorities

FRCP 56(a) .................................................................................................................3

Rules

30 C.F.R. § 250.1301 ...................................................................................................5

30 C.F.R. § 250.1701 ...................................................................................................5

30 C.F.R. § 250.1702 ........................................................................................... 5, 6, 17

30 C.F.R. § 250.1710 ...............................................................................................5, 7

30 C.F.R. § 550.143 .....................................................................................................5

4427920v1/014554

<u>Table of Exhibits</u>

<u>X1</u>    W&T E-mail Acknowledging Gross Costs Spent on MC 674 Well #1 P&A
Attempt with Uncle John

<u>X2</u>    W&T E-mail Chain Acknowledging Budget for MC 674 P&A

<u>X3</u>    M. Thomley July 17, 2014 E-mail regarding MC 674 P&A

<u>X4</u>    Excerpts from J. Vazquez deposition

<u>X5</u>    2011 Approved AFE for MC 674 P&A

<u>X6</u>    2004 Approved AFE for Drilling MC 674 #3 Well

iv

Non-operator W&T enjoyed the full benefits of its 49% participation in three offshore oil & gas wells (the "MC 674 wells"), but now refuses to pay most of its 49% share of the costs that operator Apache incurred to plug and abandon ("P&A") these wells. W&T claims in its summary judgment motion that it can avoid its obligation to pay its share of the P&A costs because, W&T says, it did not approve the P&A of these wells through a signed Authority for Expenditure ("AFE"). W&T (1) ignores its obligations under federal law, (2) ignores that W&T and its predecessor signed an AFE and approved the well operations giving rise to W&T's P&A obligations, (3) ignores W&T's multiple admissions of liability for its 49% share of the P&A costs, and (4) ignores the express language of § 18.4 of the parties' joint Unit Operating Agreement ("JOA") which provides a mandatory payment obligation for federally-required P&A operations.

Part I of this response discusses the stage of the proceedings and standard of review. Part II demonstrates that W&T is not entitled to a "no-breach" summary judgment as a matter of Louisiana contract law. W&T breached JOA § 18.4 by failing to pay its 49% share of the actual P&A costs of the MC 674 wells. Outside of its summary judgment motion, W&T has never denied its obligation to pay its 49% share of P&A costs. To the contrary, W&T expressly and repeatedly has admitted its P&A liability—the very liability W&T now denies in its summary judgment motion.

1

- In 2010, W&T signed a written agreement confirming that it remained "liable for its WI share of the future abandonment liability associated with the wells." *See* Dkt. 40-4.

- In 2012, W&T confirmed its liability when it paid its 49% Working Interest share (nearly $10 million) for the first attempt to P&A these wells. *See* X1.

- In 2012–2014, W&T admitted in multiple internal documents that it was liable for 49% of the P&A expenses. *See, e.g.*, X2; X3; Dkt. 40-32.

- In 2015, after Apache filed this lawsuit, W&T paid Apache only approx. $24 million of the over $68 million that is W&T's 49% P&A liability based on actual costs incurred to P&A the wells. Dkt. 40-28. W&T's (albeit short) payment is further proof that—contrary to its summary judgment motion—W&T admits it has the contractual obligation to pay its 49% share.

- In 2016, W&T's president admitted in her deposition that "W&T is responsible for its 49 percent share of the plugging and abandonment costs to plug and abandon the three wells at issue in this case." *See* X4 at 32:10–33:1.

W&T did not deny its general obligation to pay for the P&A. Rather, W&T (improperly) short-paid because it wanted Apache to use a less-capable and less-safe intervention vessel instead of using drilling rigs to P&A the wells. The JOA does not countenance W&T's short-payment. JOA § 5.1 gives operator Apache (not non-operator W&T) the exclusive right to select equipment for operations.

W&T incorrectly says that it can avoid its P&A obligation by refusing to sign Apache's AFE for this federally-mandated P&A. A signed AFE is not required because W&T and its predecessor long-ago approved the well operations that gave rise to W&T's P&A obligations under federal regulations. Federal law

2

and JOA § 18.4 required operator Apache to P&A the wells, *and* obligated Apache and W&T to pay their respective 51% and 49% share of the P&A costs.

Part III demonstrates that W&T is not entitled to affirmative summary judgment to avoid payment of the contractually-permitted overhead charges for MC 674 joint expenses dating back to 2004 and 2009.

The summary judgment evidence disproves W&T's motion, and confirms Apache's entitlement to partial summary judgment (Dkt. 40)[1].

## I.
### Stage of Proceedings and Standard of Review

On June 9, 2016, the parties filed cross-motions for partial summary judgment and *Daubert* motions. Dkt. 40–44. The pretrial conference is September 23, and trial begins October 17, 2016. Dkt. 7.

W&T's partial motion for summary judgment seeks a no-liability finding on Apache's breach claim, based solely on the lack of a signed AFE. Summary judgment for W&T is not appropriate because W&T cannot demonstrate entitlement as a matter of law. *See Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668 (5th Cir. 2012); FRCP 56(a). The interpretation of the parties' JOA presents a legal question, not a factual one. *See Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 238 (5th Cir. 2016). Louisiana

---

[1] Apache incorporates here its motion for partial summary judgment and exhibits (dkt. 40).

law applies under the Outer Continental Shelf Lands Act. *See* 43 U.S.C. § 1333(a)(2)(A).

II.

W&T Breached Its JOA Obligation to Pay 49% of P&A Costs

W&T failed to pay the full amount of its share of the MC 674 P&A costs after Apache incurred approximately $140 million in expenses.  Dkt. 41 at 6–7, 11; X4 at 31:12–21.  Louisiana law recognizes three elements to a breach of contract claim:  (1) obligation, (2) breach, and (3) damages.  *Favrot v. Favrot*, 68 So. 3d 1099 (La. Ct. App. 2011).  W&T's motion disputes only the first element— whether the JOA obligated W&T to pay its 49% share of the MC 674 P&A costs.

W&T's new argument is that the JOA did not obligate it to pay its share of federally-mandated P&A costs because W&T refused to sign Apache's AFE to P&A the wells.  W&T is wrong.  W&T did not cite a single case from Louisiana (or any other jurisdiction) supporting its assertion that non-operators can avoid their share of P&A costs by refusing to sign AFEs.  Federal law and the parties' JOA here reject W&T's assertion.

A.  Under Federal Law and the JOA, W&T Has Been Obligated to Pay Its Share of the P&A Costs Ever Since It Acquired Its Interest in the MC 674 Wells.

Federal law governs offshore oil and gas operations and provides context for the parties' intent under the JOA.  *See* La. Civ. Code Ann. Art. 2053.  Co-lessees

4

must designate a single operator to act on behalf of all lessees and bear
responsibility for fulfilling lease obligations:

> You must provide [BSEE] an executed Designation of Operator
> form…unless you are the only lessee and are the only person conducting
> lease operations….This designation is authority for the designated operator
> to act on your behalf and to fulfill your obligations under the Act, the lease,
> and the regulations.

30 C.F.R. § 550.143(a)–(b).  When offshore properties are unitized, as here, federal
regulations also require designation of a unit operator:

> The unit operator and the owners of working interests in the unitized leases
> must enter into a unit operating agreement.  The unit operating agreement
> must describe how all the unit participants will apportion all costs and
> liabilities incurred maintaining or conducting operations.

*Id.* § 250.1301(e).  Consistent with federal law, the parties' JOA designates an
operator—Apache—as having the "exclusive right and duty to conduct…all
operations pursuant to this Agreement." *See* JOA § 5.1; *see also* JOA §§ 2.43, 4.1
(Apache succeeded its predecessor-in-interest Mariner as operator).

Federal regulations require decommissioning—the permanent abandonment
of wells—one year after an offshore lease terminates.  30 C.F.R. § 250.1710.  The
MC 674 lease terminated in 2011.  Dkt. 40-30.  As a matter of federal law, Apache
and W&T share the P&A obligation:  "Lessees and owners of operating rights are
jointly and severally responsible for meeting decommissioning obligations…as the
obligations accrue and until each obligation is met."  *Id.* § 250.1701(a).  The MC
674 wells first accrued the decommissioning obligation when drilled, *id.*

5

§ 250.1702(a), and Apache and W&T became responsible under federal law for the P&A of the MC 674 wells at the moment that they acquired their working interest ownership in the MC 674 wells from their predecessors Mariner and Burlington and became co-lessees. *Id.* § 250.1702(d); *see also* Dkt. 22 at ¶9 (W&T admits it acquired Burlington's MC 674 interests).

In 2010, W&T decided to opt out of further participation in the wells, but W&T expressly agreed that it remained obligated for future P&A costs:

> Notwithstanding anything herein to the contrary, and except with respect to the Flowline P&A Obligations, *W&T shall only **remain liable for its WI share of the future abandonment liability** associated with the wells located on the MC 718 Unit* and the jointly owned facilities located on the SP 89 "B" Platform as of March 13, 2009.

Dkt. 40-4. (all emphasis in this brief is added). The MC 674 wells are within the MC 718 Unit. Dkt. 40-2, § 2.64.

In 2012, W&T approved Apache's AFE to P&A these same wells using the Uncle John intervention vessel. X5. W&T paid almost $10 million for its 49% share of the 2012 P&A attempt—showing W&T knows it is responsible for its 49% share of the P&A costs (contrary to W&T's motion). *See* X1. The Uncle John intervention vessel was not able to complete the P&A work—a fact that informed Apache's later decision to use drilling rigs to P&A the wells rather than trying to use a different company's intervention vessel as W&T wanted. After the

unsuccessful 2012 P&A attempt, W&T continued to recognize its obligation to pay its share of the future P&A expenses. *See* X2.

B. JOA § 18.4 Defeats W&T's Argument.

W&T concedes at page 14 that JOA § 18.4 applies to this situation, where the P&A of the MC 674 wells is required by the federal government.   By 2014, Apache and W&T were two years overdue in complying with the 30 C.F.R. § 250.1710 abandonment requirements. *See* Dkt. 40-30.  JOA § 18.4 provides:

> Abandonment Operations Required by Governmental Authority:   The *Operator shall conduct the abandonment* and removal of any well, Production System or Facilities required by a governmental authority, *and the Costs, risks and net proceeds will be shared by the Participating parties in such well*, Production System or Facilities according to their Participating Interest Share.

JOA § 18.4 is unambiguous:  Operator Apache "shall" conduct the federally-required abandonments, and non-operator W&T "will share" the costs, according to its 49% participating interest share. *Id.*  W&T admits at page 9 that "The word 'shall' excludes the possibility of being 'optional' or even subject to 'discretion,' but instead 'shall' means 'imperative, of similar effect and import with the word 'must.'" (citing *La. Fed'n of Teachers v. State*, 118 So. 3d 1033, 1051 (La. 2013)).

**W&T's President Jamie Vazquez testified under oath in this lawsuit that W&T *is responsible* for its share of the MC 674 P&A costs**:

> Q:    The truth of course, is that W&T is responsible for its 49 percent share of the plugging and abandonment costs to plug and abandon the three wells at issue in this case, right?

7

> A:    *W&T has always said it was responsible for its share of plugging and abandonment.*
>
> Q:    Because while the contract does give W&T as nonoperator the right to go what's called nonconsent on certain operations, W&T does not have the right to go nonconsent or withdraw from or otherwise avoid plugging and abandonment of wells' costs, true?
>
> A:    The company recognizes its obligation to plug and abandon the wells.
>
> Q:    To pay its share to do so?
>
> A:    Uh huh.  Yes.

X4 at 32:10–33:1.  President Vazquez's sworn admission that W&T "recognizes its obligation to plug and abandon the wells" and "always" has powerfully defeats W&T's attempt to reverse course and deny its obligation.

Under JOA § 18.4, Apache was contractually obligated to conduct the P&A, regardless of any affirmative approval or election by W&T.  Under JOA § 18.4, W&T is obligated to pay its share of the "Costs."  Nothing in JOA § 18.4 purports to limit or redefine those "Costs" in any way.  Indeed, JOA § 2.10 defines "Costs" as "all expenses" that Apache incurs in the operations.

JOA § 18.4 is unambiguous and should be enforced as written.  LA. CIV. CODE ANN. ART. 2046.  Contracts have the effect of law for the parties, LA. CIV. CODE ANN. ART. 1983, and courts are obligated to give legal effect to contracts according to the parties' common intent.  *Id.* § 2045.  The parties' common intent is determined in accordance with the general, ordinary, plain and popular meaning of the words used in the JOA.  *See Prejean v. Guillory*, 38 So.3d 274, 279 (La.

8

2010).  JOA § 18.4 requires Apache to P&A the wells required by governmental

authority and mandates that W&T pay its 49% share of Apache's costs.

### C. W&T's Repeated Acknowledgment of Its P&A Obligations Disproves Its New Litigation Position and Defeats Summary Judgment.

W&T says at page 15 that "W&T is excused from *any* liability for

expenditures incurred without an approved AFE or approval as a General Matter."

If W&T's JOA § 6.2 argument is to be believed, then W&T had no obligation to

pay any amount of money to Apache for the P&As without a signed AFE.  W&T

knows its new argument is untrue and that, in fact, it is financially responsible for

its share of the MC 674 P&A costs.

W&T's Senior Landman Michael Thomley explained to his superiors:

> Operations to Maintain the contract area were proposed.  W&T non-consented this operation and therefore withdrew subject to Article 17 of the OA.  W&T settled with Mariner to abandon the flowline for $1,347,500 and *remained liable for the well abandonments.*

> Due to the fact that we are officially withdrawn from the agreement we do not have any recourse as to the upcoming proposal from Apache.…

> I have discussed this with Gene and he is in concurrence with my evaluation.  It would have been nice to have made the abandonment payments back in 2010 and possibly benefited from a lower cost, but *we are on the hook for the abandonment and cannot officially make any counter proposal as a non-participating Party to the JOA.*

X3.  W&T's admitted in its concurrent internal presentation that:

> W&T withdrew from the Operating Agreement.  *W&T remained liable for the PA of 3 wells.*  AFEs for 3 well PAs came November 16, 2011.  Apache was unsuccessful in the PA operations.  *W&T still remains liable for 3 well PAs.*

Dkt. 40-32. In February 2015, W&T again admitted liability by sending its short-

payment of $24 million to Apache and writing:

> W&T is in receipt of Apache Deepwater, LLC's request for payment of 49% of the plugging and abandoning costs associated with wells MC 674 #1, MC 674 #2, and MC 674 #3 (the "Pluto Wells"). As you know, W&T disputes the amount of these charges and a lawsuit has been filed against W&T related to these costs....

> *W&T hereby presents payment in the amount of $24,860,640.00 for its share of the costs associated with plugging and abandoning these wells.* W&T determined its share of the reasonable and prudent costs of plugging and abandoning these wells based on W&T's proposed AFEs for this work, which called for the use of an intervention vessel. Among other reasons, Apache's insistence on using a drilling rig unnecessarily and unreasonably increased the costs of this work.

Dkt. 40-28.

W&T's conduct confirms that its reliance on JOA § 6.2 at pages 8–11 is

disingenuous after-the-fact lawyer argument. Under LA. CIV. CODE ANN. ART.

2053, "A doubtful provision must be interpreted in light of the nature of the

contract, equity, usages, *the conduct of the parties before and after the formation*

*of the contract,* and of other contracts of a like nature between the same parties."

*See also Lomark, Inc. v. LavigneBaker Petroleum, L.L.C.*, 110 So. 3d 1107, 1111

(La. Ct. App. 2013) (parol evidence admissible to clarify uncertainty). W&T

would have this Court (incorrectly) read JOA § 6.2 as a *complete bar to liability*

for the P&As, such that W&T's prior statements were false and such that W&T's

$24 million short payment to Apache was made out of the goodness of W&T's corporate heart.

W&T's newly contrived (and demonstrably false) argument is a cover for W&T's real disagreement in this case:  that W&T wanted operator Apache to use a cheaper, less capable piece of equipment to conduct the P&As—the Helix 534 vessel—as opposed to the safer drilling rigs that Apache used and that over 90% of operators use for P&A operations in the Gulf of Mexico.  *See* Dkt. 40-44 at 2–3.

To try to push its share of costs onto Apache, W&T seeks to use JOA § 6.2 as a *veto right* over any operational decision that W&T does not like and does not want to pay for.  W&T's view is unsupported by the plain meaning of JOA §§ 6.2 (discussed *infra* at Part II.B) and 18.4, and it directly contradicts JOA § 5.1 which grants Apache full discretion over operational decisions:

> <u>Exclusive Right to Operate</u>:  Except as otherwise provided, the *Operator has the exclusive right and duty to conduct* (or cause to be conducted) *all operations* pursuant to this Agreement.  In performing services under this Agreement for the Non-Operators, the Operator is an independent contractor, *not subject to the control or direction of Non-Operators*, except for the type of operation to be undertaken in accordance with the voting and Election procedures in this Agreement….*The Operator shall contract for and employ any drilling rigs*, tools, machinery, equipment, materials, supplies and personnel *reasonably necessary for the Operator to conduct the operations provided for in this Agreement, regardless of which rig a Non-Operating Party included in a well proposal submitted by such Non-Operating Party.*

Dkt. 40-2.  The parties' JOA anticipated disagreement among the owners—that is why the JOA (and federal law, *see supra* Part II.A) vests the operator (Apache)

with the exclusive right to conduct operations for the joint property, and *also* the ultimate discretion on how to do so.  Apache is "not subject to the control or direction of Non-Operator" W&T.  *Id*.  Apache "shall contract" equipment, including "any drilling rigs," necessary to conduct operations, without regard to "which rig [W&T] included in a well proposal."  *Id.*  W&T's interpretation is in direct conflict with the parties' stated intent.

D.  <u>JOA § 6.2 Does Not Limit JOA § 18.4 to Require Pre-Approval of Government-Mandated Abandonments.</u>

W&T says at page 2 of its motion that "the JOA requires an approved Authorization for Expenditure ('AFE') before the Operator may make *any* single expenditure or undertake any activity or operation costing $200,000 or more," (emphasis original), and says at 14 that JOA § 18.4's the abandonment provision somehow incorporates and is limited by JOA § 6.2.  W&T thus argues that it is not liable as long as it did not sign Apache's AFEs.  Wrong.  JOA § 6.2 does not allow W&T to avoid its mandatory payment obligations under JOA § 18.4.  W&T's relied-upon portion of JOA § 6.2 provides:

> The Operator shall not make any single expenditure or undertake any activity or operation costing Two Hundred Thousand Dollars ($200,000) or more, unless an AFE has either (1) been included in a proposal for an activity or operation and is approved by the Participating Parties through their Election to participate in the activity or operation, or (2) received the approval of the Parties as a General Matter.  When executed by a Party, an AFE grants the Operator the authority to commit or expend funds on the activity or operation in accordance with this Agreement for the account of the Participating Parties.

12

The AFE approval requirement in JOA § 6.2 applies only to *discretionary* well operations/expenditures, not to mandatory operations (like abandonment) that already received approval by the parties through federal law or through their election to participate in the original well development.   Article 6 and other provisions of the JOA confirm this.

JOA § 6.2.2 ("Supplemental AFEs") describes the situation in which an operator's expenditures for an operation will exceed an original approval, and notes that "the Operator shall submit a supplemental AFE to the Participating Parties in order for them to make an Election as to their further participation in the well, activity or operation covered by the original AFE."  If all parties *opt out* of the operation after receiving the supplemental AFE, then, "the Operator shall cease the applicable activity or operation and that activity or operation shall be deemed completed."  *Id.*  Abandonment under JOA §18.4 is *not* discretionary, and cannot merely be "ceased" and "deemed completed" and opted out by the parties when the project costs increase above expectation.  *No JOA party is permitted to go "non-consent" or elect not to participate in government-mandated abandonment.* W&T's attempt to impose the § 6.2 AFE approval requirement on JOA § 18.4 is inconsistent with other provisions in Article 6 and with federal law. W&T is wrong when it says at page 14 that Apache's interpretation of JOA § 18.4 renders Article 6 "meaningless."

JOA §§ 10.3, 11.5, and 13.7 show that the parties knew how to require an election or AFE approval when they intended to do so. These sections govern the P&A of exploratory wells, appraisal wells, and development wells—different from the P&A of formerly Producible Wells (JOA § 2.51) at issue here. Unlike JOA § 18.4, these sections expressly require approval of P&A operations as a "General Matter:"

> [JOA § 10.3.] <u>Plugging and Abandoning Costs</u>: …. Unless the Exploratory Well is a Producible Well and its plugging and abandonment are therefore governed by Article 18.1 (Abandonment of Wells), *the plugging and abandonment of the Exploratory Well requires the approval of the Participating Parties as a General Matter*….

> [JOA § 11.5] <u>Plugging and Abandoning Costs</u>: …. Unless the Appraisal Well is a Producible Well and its plugging and abandonment are therefore governed by Article 18.1 (Abandonment of Wells), *the plugging and abandonment of the Appraisal Well requires the approval of the parties as a General Matter*….

> [JOA § 13.7] <u>Plugging and Abandoning Costs</u>: …. Unless the Development Well is a Producible Well and its plugging and abandonment are therefore governed by Article 18.1 (Abandonment of Wells), *the plugging and abandonment of the Development Well requires the approval of the Participating Parties as a General Matter*….

Dkt. 40-2.

In contrast, JOA § 18.4 does not include any such approval language and does not require additional "approval of the Participating Parties." Why not? Because *federal law* requires the parties to P&A the no-longer producing wells at issue from the expired federal lease, and JOA § 18.4 provides that the costs "will be shared" by the parties. Under LA. CIV. CODE ANN. ART. 2050, contract

14

provisions "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."  Here, the JOA's other P&A provisions for other kinds of wells confirm what JOA § 18.4's plain language already makes clear—a party (W&T) cannot opt out of its P&A liability by refusing to sign an AFE for government-mandated abandonments.

As a matter of Louisiana law, contract provisions must be interpreted to render them effective, not ineffective, LA. CIV. CODE ANN. ART. 2049, and specific provisions (like JOA § 18.4) control over general provisions (like JOA § 6.2 that purports to address "any" circumstance).  In *Molero v. California Co.*, 145 So. 2d 602, 609 (La. Ct. App. 1962), the court explained that "Clauses couched in general terms, which, if taken literally would lead to *unreasonable* consequences, must be construed according to what, under the circumstances, was most probably the intention of the parties."  *See also* LA. CIV. CODE ANN. ART. 2015 (Although a contract provision is worded in general terms, like JOA § 6.2, it must be interpreted to cover only those things the parties intended to include.).  JOA § 18.4's specific directive that operator Apache "**shall**" conduct the P&A and that those costs "**will be shared**" by W&T controls over JOA § 6.2's general provisions that W&T tries to read to the contrary.  This is especially true where W&T's proposed interpretation would allow a participating party to avoid its

15

obligation to pay for its share of a federally-mandated P&A, simply by refusing to approve an AFE.

W&T's decades-old case law interpreting different provisions of different JOAs is not on point.  In *Forest Oil Corp v. Superior Oil Co.*, 338 So. 2d 758 (La. App. 4th Cir. 1976), the at-issue JOA's "consent provision" by its own terms was limited and *only* related to expenses for operations to drill a well.  *Id.* at 760, n. 1. The *Forest Oil* provision is specific and is quite different from JOA § 6.2's general language purporting to address "any" operation.

In *Lancaster v. Petroleum Corp.*, 491 So. 2d 768 (La. App. 3d Cir. 1986), the court found that an operator breached the JOA where it failed to give 90-day notice of resignation as explicitly required in the contract, and threatened to P&A a producing well without waiting for the non-operators' consent.  Again, the at-issue *Lancaster* JOA provisions are precise and unambiguous, *see id.* at 776, and not comparable to any JOA provision here.  The *Lancaster* P&A provision (Article 7) relates to discretionary abandonment of a well not producing in paying quantities—a very different issue than the government-mandated abandonment of the MC 674 wells.  *See id.*

E.   <u>W&T and its Predecessor Elected to Participate in the MC 674 Exploration, Development, and P&As</u>

Even if JOA §6.2 did apply and did trump § 18.4 for government-mandated operations like the P&As at issue here—it does not—W&T's P&A obligations had

16

already accrued and thus been approved when W&T and its predecessor elected to participate in drilling the MC 674 wells.  JOA § 8.2.2 provides:

> Subject to Article 6.2 (Authorization for Expenditure), an Election to participate in an Exploratory Operation, an Appraisal Operation or a Development Operation *is an Election to participate in all necessary expenditures* for drilling, testing (except Production Testing), and logging to the Objective Depth (*including plugging and abandonment*) as set out in the AFE.

Dkt. 40-30.  W&T inherited this obligation when it acquired Burlington's interest in MC 674 wells #1 and #2, and when W&T elected to participate in the #3 well. *See, e.g.,* X6 at 2.  This is consistent with federal regulations, where the lessee's decommissioning obligation accrues when the well is first drilled *or* when an owner first acquires his interest.  *See* 30 C.F.R. § 1702(a), (d).  The initial election to participate satisfies JOA § 6.2(1)'s requirement of approval "by the Participating Parties through their election to participate in the activity or operation."

W&T at page 10 says that the P&A of the MC 674 wells was a JOA § 8.1 "General Matter" subject the JOA § 8.2.1 voting provisions, which is inconsistent with its (also wrong) JOA § 6.2 argument about AFE approval.  JOA § 8.1 provides:

> There are four (4) general classes of operations or activities under this Agreement:  (a) *General Matters*, (b) Elections, (c) those requiring mutual agreement, unanimous agreement, or unanimous consent, and (d) *those within the discretion of the Operator*.

Dkt. 40-30.  W&T fails to explain or define what a "General Matter" is or why Apache's decision to use a drilling rig, rather than an intervention vessel, for a federally-mandated P&A operation under JOA § 18.4 is a "General Matter" and not a matter "within the discretion of the Operator," as described in JOA § 8.1(d). JOA § 18.4 says nothing about voting.  JOA § 18.4 does not refer to a "General Matter." There is no textual basis to conclude that the choice of equipment for a government-mandated P&A pursuant to JOA § 18.4 is a "General Matter" that the parties must vote on.  On the contrary, JOA § 18.4 makes clear that the P&A operation is mandatory and JOA § 5.1 makes clear that Apache as operator—not W&T—has the right to select the drilling rigs and other equipment reasonably necessary to complete the P&A operations.

Even if JOA § 18.4's government-mandated P&A was an operation that required General Matter voting approval—it is not—the summary judgment evidence demonstrates that the voting procedures in JOA § 8.2.1 were satisfied by W&T and Apache's initial joint approval of the P&A of the MC 674 wells.  *See* JOA § 8.2.1 (General matters are decided by two or more parties with a combined voting interest of 51%).

*In 2012, W&T signed an AFE and approved the P&A of the MC 674 wells using the Uncle John vessel.  See* X5.  W&T did not mention this in its motion. W&T's approval is binding and irrevocable under JOA § 8.2.1:

> A party making an affirmative vote to approve a General Matter is bound by its vote and will be a Participating Party in the approved activity or operation.

Dkt. 40-30.  After W&T's approval, nothing in the text of JOA § 8.2.1 then limited operator Apache's JOA § 5.1 "exclusive right to operate" and Apache's discretion to choose the appropriate equipment necessary to complete the operation.

### III.
### The JOA Accounting Procedures Provide for Overhead

W&T advances a second contractual misinterpretation of the JOA's Exhibit C Accounting Procedures, in order to seek affirmative summary judgment on two overhead charges by operator Apache for administering the MC 674 Joint Account. *See* Dkt. 40-30 at 106–107.  The Court should deny summary judgment because W&T's interpretation is contrary to the express language of the contract and because W&T did not introduce *any* evidence of these disputed charges into the summary judgment record to demonstrate its entitlement to relief as a matter of law on these items from W&T's audit-related counterclaims.  *See Oakerson v. City of Brownsvill*e, No. 15-41256, 2016 WL 3996701, at *3 (5th Cir. July 25, 2016).

Section III of the Exhibit C Accounting Procedures ("Overhead") permits Apache to charge 12% overhead on operation costs, "as compensation for administrative, supervision, office services and warehousing costs" "in lieu of costs and expenses of all office and salaries or wages."  Dkt. 40-30 at 106. Overhead is calculated by Exhibit C § III.2(b):

19

(2) Application of Overhead – Percentage Basis shall be as follows:

(a) Development shall include all costs in connection with [development activities not relevant here] …

(b) *Operating rate shall be applied to all other costs in connection with Joint Operations* except those subject to Section III Paragraphs 1 and 3 [inapplicable provisions relating to project team costs and major construction/catastrophe costs].

*Id.* This language allows Apache to charge 12% percent overhead on "all other" costs associated with Joint Operations. "Joint Operations" includes "activities required to handle specific operating conditions and problems for the exploration, appraisal, development, *production*, protection, maintenance, abandonment, and restoration of the Joint Property." *Id.* Processing MC 674 crude oil to pipeline-quality so that it can be transported off platform was necessary for *production* of oil and gas from these wells. Offshore crude cannot be "produced" without transport onshore. W&T does not provide a JOA-based argument or any evidence to show that "production" does not include necessary processing.[2]

_____

[2] W&T appears to argue that the "Joint Operations" definition is ambiguous when W&T cites to a 2012 oil and gas accounting manual—written some *thirteen years* after this JOA and offering no interpretation of its language—to argue that W&T's interpretation supposedly "conforms to industry practice." *See Frischhertz Elec. Co. v. Hous. Auth. of New Orleans*, 534 So. 2d 1310, 1314 (La. Ct. App. 1988) ("In contract cases, custom should be relevant only if the contract is silent on the issue."). W&T has offered no evidence of what surrounding circumstances or industry custom were at the time the contract was made. *See Indus. Roofing & Sheet Metal Works, Inc. v. J.C. Dellinger Mem'l Trust*, 751 So. 2d 928, 933, 936 (La. Ct. App. 1999).

## IV.
### Conclusion

This Court should deny W&T's motion and should grant Apache's motion for partial summary judgment (Dkt. 40).

Dated: August 3, 2016

Respectfully submitted,

/s/ *Geoffrey L. Harrison*
Geoffrey L. Harrison
gharrison@susmangodfrey.com
State Bar No. 00785947
S.D. Admissions No. 16690
William R. H. Merrill
bmerrill@susmangodfrey.com
State Bar No. 24006064
S.D. Admissions No. 23601
Ashley McMillian
amcmillian@susmangodfrey.com
State Bar No. 24070252
S.D. Admissions No. 1571928
Abigail C. Noebels
anoebels@susmangodfrey.com
State Bar No. 24083578
S.D. Admissions No. 2209468
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, #5100
Houston, Texas  77002
Telephone:  (713) 653-7807
Facsimile:  (713) 654-6666

*Attorneys for Apache Corporation and*
*Apache Deepwater LLC*

Certificate of Service

I certify that on August 3, 2016 this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing.

*/s/ Abigail C. Noebels*
Abigail C. Noebels